* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan. The appealing party has shown good ground to reconsider the evidence. Having reviewed the competent evidence of record, the Full Commission rejects the findings of fact and conclusions of law in the Opinion and Award of Deputy Commissioner Donovan and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of plaintiff's alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. An employer/employee relationship existed at the time of plaintiff's alleged injury by accident between Patricia Lewis and Trade Oil Company.
3. Selective Insurance of South Carolina insured Trade Oil Company on the dates of plaintiff's alleged injuries by accident.
4. Plaintiff's average weekly will be determined from detailed payroll records, which have previously been provided by the defendants in lieu of an Industrial Commission Form 22. According to the payroll documents submitted, plaintiff earned $41,911.97 between January 31, 2004 and February 1, 2005. Dividing this figure by 52 weeks gives plaintiff an average weekly wage of $805.99, yielding a compensation rate of $537.60, to which the parties stipulate.
5. The issues for determination are:
 a. Whether plaintiff's injury by accident occurred within the scope of her employment?
 b. To what, if any, benefits is plaintiff entitled?
 c.Whether plaintiff is entitled to ongoing medical treatment?
 d. Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 e. Whether plaintiff's claim for benefits is barred for failure to timely report her claim?
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence: *Page 3 
 a. Stipulated Exhibit #1: Medical records, wage documents, personnel records, I.C. Forms, discovery responses.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 42 years old and had completed high school. Plaintiff was hired by defendant in October 1998 as a manager for a convenience store in Beaufort, North Carolina.
2. In September 2003, plaintiff accepted a promotion to District Manager, controlling approximately ten stores. Plaintiff worked as the district manager for eight months, then resigned her position. Plaintiff subsequently requested and was reassigned back to the manager position at the Beaufort store.
3. Plaintiff alleges that while employed with defendant that she injured her back and leg in a lifting incident on February 1, 2005 and suffered a subsequent aggravation on May 30, 2005. However, the greater weight of the competent evidence does not support plaintiff's allegations of injury.
4. As a store manager, plaintiff was responsible for making sure that her store was staffed and operating during business hours. Plaintiff was also responsible for completing an accident report for any accident involving company personnel, customers, or equipment and forwarding it to the home office. Although Mr. David Garris, regional manager for defendant, testified that there was no formal training program regarding the reporting of work-related *Page 4 
injuries, plaintiff had access to manuals containing the information regarding reporting work-related injuries.
5. On February 1, 2005, plaintiff testified that she was lifting oil when her back and left leg began hurting her. On that date, plaintiff reported to Urgent Care where she treated with Mr. James A. Regan, PA-C. Mr. Regan noted plaintiff stated that she was lifting some heavy boxes and aggravated her sciatic nerve. Mr. Regan examined plaintiff, prescribed her naproxyn, and released her to return within ten days or sooner if her condition did not improve. Plaintiff did not return to see Mr. Regan, but returned to work the next day.
6. Plaintiff testified that she was in constant pain after February 1, 2005; however, plaintiff did not return to a physician for her back condition until May 31, 2005. Furthermore, plaintiff did not miss any work from February 1, 2005 through May 31, 2005. Plaintiff admitted that she did not inform her district manager that she had a workers' compensation injury or report her alleged injury to any other supervisor.
7. On May 31, 2005, plaintiff presented to Mr. Jack Orton, PA-C, a physician's assistant with Dr. James Crosswell Jr.'s office. Mr. Orton noted that plaintiff reported back pain and burning down her left leg that had been present for about one year. This would indicate that plaintiff's problems began in approximately May of 2004. Although plaintiff reported that she had been seen by someone previously for a back pain incident at work, Mr. Orton testified that plaintiff never reported that a lifting incident at work caused her problem. Plaintiff did not specifically tell him that she had lifted something nor did she indicate an incident in February or May of 2005. In addition, Mr. Orton noted that plaintiff indicated that she had not said anything to anyone about her pain. *Page 5 
8. Plaintiff maintains that she faxed a note from Mr. Orton restricting her work hours to Mr. Warren Canfield, plaintiff's district manager. However, Mr. Canfield testified that he was never contacted by plaintiff and he never received the fax copy of Mr. Orton's out of work note. He further maintains that every employee is given workers' compensation policy instruction. Mr. Canfield did not learn of plaintiff's alleged work-related back injury until October 2005 when plaintiff filed a Form 18.
9. On June 1, 2005, Trade Oil Company and WilcoHess merged. Plaintiff became an employee of WilcoHess. On this date, plaintiff also applied for Family and Medical Act ("FMLA") leave and for short-term disability. On June 9, 2005, plaintiff left work on short-term disability and for FMLA. Plaintiff received short-term disability in the amount of $511.00 every two weeks from June 9, 2005 until December 10, 2005.
10. Prior to filing her FMLA application, plaintiff had informed her managers that she was having difficulty running her store and with staffing. Plaintiff indicated that she was short staffed and that she just couldn't do it anymore. Plaintiff never reported to either of her supervisors that she had any work-related injuries.
11. Plaintiff did not report a work injury to anyone until after her FMLA leave had expired in September 2005. The undersigned give greater weight to the testimony of Mr. Canfield regarding whether plaintiff notified defendant of her alleged work injury and the existence of training in workers' compensation procedure. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff did not notify defendant of her alleged work injury until October 2005 and that plaintiff was aware of defendants' polices and her duties regarding the reporting of work related injuries. *Page 6 
12. On June 6, 2005, Dr. Stephen Sides at Carteret General Hospital performed an MRI of plaintiff's lumbar spine which was essentially normal with no central stenosis or evidence of nerve root impingement. After reviewing the MRI, Mr. Orton noted that plaintiff's MRI was within normal limits.
13. On July 6, 2005, plaintiff returned to Mr. Orton at which time plaintiff was referred to Dr. Jim Graham, a chiropractor, because plaintiff's MRI was normal. Mr. Orton noted that one of plaintiff's hips was higher than the other one, which may be the cause of plaintiff's problems.
14. On July 8, 2005, Mr. Orton and plaintiff signed plaintiff's FMLA application indicating that plaintiff's condition commenced on May 31, 2005. On the application, Mr. Orton did not refer to a February 1, 2005 or May 31, 2005 lifting incident.
15. On July 11, 2005, plaintiff presented to Dr. Graham with complaints of back and leg pain. Plaintiff completed an application for treatment on which she indicated on one page that her problems began on May 31, 2005 and then indicated on the next page under patient history that her problems began on May 30, 2005. Plaintiff did not report a lifting injury on the job. However, plaintiff did report that she had previously received chiropractic care. Dr. Graham prescribed a therapy program for plaintiff and also gave her a lumbar brace to wear. Plaintiff treated with Dr. Graham through May 2006 when he referred plaintiff to Dr. Held, a neurosurgeon.
16. Plaintiff's FMLA leaved expired on September 9, 2005; however, plaintiff did not return to work for defendant. Plaintiff remained on short-term disability until December 10, 2005. *Page 7 
17. On September 26, 2005, plaintiff returned to Mr. Orton at which time plaintiff reported for the first time that her back pain developed through a lifting incident at work on February 1, 2005. Plaintiff did not mention a second alleged lifting incident on May 31, 2005.
18. Although plaintiff's medical records are to the contrary, Mr. Orton testified that he believed that plaintiff suffered a back injury on February 1, 2005 and an exacerbation on May 31, 2005. However, Mr. Orton's opinion was based upon the fact that he would have to believe plaintiff's version of her alleged injury. As the Full Commission finds that plaintiff's testimony concerning her alleged February 1, 2005 injury and May 31, 2005 exacerbation is not credible, the Full Commission gives less weight to Mr. Orton's opinion testimony as to the cause of plaintiff's injury as it based upon incredible information provided by plaintiff.
19. On October 5, 2005, plaintiff filed a Form 18 Notice of Accident to Employer indicating that she injured her back on February 1, 2005 while moving stock. Plaintiff never filed a claim for a lifting incident or aggravation occurring in May of 2005.
20. On October 13, 2005, plaintiff treated with Dr. C. E. Ballenger at Coastal Neurological Associates. Dr. Ballenger's note indicated that plaintiff's pants were rather tight and that may be the cause of her pain. Throughout Dr. Ballenger's note, Dr. Ballenger never indicated plaintiff's pain was caused by an injury at work
21. On May 31, 2006, plaintiff responded to defendants' First Set of Pre-Hearing Interrogatories, in which plaintiff stated that her injury arose due to a lifting incident at work on February 1, 2005. Plaintiff denied that she had sustained any aggravation or new injury to the condition that forms the basis of the claim since the date of the initial injury.
22. On July 13, 2006, Dr. Stephen J. Dalrymple wrote a letter to Dr. Graham indicating that he had reviewed plaintiff's February 8, 2006 MRI of the lumbar spine. Dr. *Page 8 
Dalrymple stated plaintiff's MRI is essentially normal because plaintiff has normal looking discs and disc morphology. Dr. Dalrymple also stated that plaintiff's symptoms are more like SI joint arthropathy than radiculopathy or axial skeletal pain.
23. On July 19, 2006, plaintiff treated with Mr. Shanee L. Savoie, PA-C at Carteret Pain Medicine. Upon presenting to Mr. Savoie, plaintiff reported a new history of her back pain that plaintiff had not provided to any previous medical provider. During this visit, plaintiff reported to Mr. Savoie that her pain began on February 1, 2005 and that she returned to work with continued pain which was slightly improved until she again had an onset of pain in May, 2005. Mr. Savoie diagnosed plaintiff as having left SI joint dysfunction, and he scheduled her for a series of SI joint injections.
24. On August 17, 2006, after receiving several SI joint injections, plaintiff treated with Dr. Ronald M. Long at Carteret Pain Medicine and reported that she was essentially pain free. Dr. Long diagnosed plaintiff with sacroilitis. Dr. Long testified that if plaintiff was continually in pain following February 1, 2005 as plaintiff indicated, then plaintiff should have returned within ten days to the clinic. After reviewing plaintiff's medical records, Dr. Long could not say with certainty when plaintiff's alleged injury occurred.
25. The undersigned find that the greater weight of the competent evidence shows that plaintiff did not sustain an injury by accident while working for defendant on February 1, 2005 or May 31, 2005 and that plaintiff did not sustain an aggravation to a pre-existing injury on May 31, 2005.
26. Plaintiff has failed to prove that she is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Accordingly, the undersigned find as fact that defendants have not defended this claim unreasonably. *Page 9 
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer an injury to her back due to a specific traumatic incident while employed with defendant on February 1, 2005 nor did plaintiff suffer an exacerbation to her alleged lifting injury on May 31, 2005. N.C. Gen. Stat. § 97-2(6).
2. As plaintiff has failed to proved that she suffered a compensable injury due to her employment with defendant, plaintiff is not entitled to workers' compensation disability or medical benefits. N.C. Gen. Stat. §§ 97-29; 97-25
3. Plaintiff has failed to prove that defendants' defended this claim without reasonable ground; therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs.
This the 12th day of March, 2008.
 S/ BUCK LATTIMORE COMMISSIONER *Page 10 
CONCURRING:
S/
DIANNE C. SELLERS
COMMISSIONER
S/
CHRISTOPHER SCOTT
COMMISSIONER